```
                    THE UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA          ) Bay City, Michigan
                                  ) May  18, 2021
     vs.                          ) 2:01 p.m.
                                  )
JUSTIN WILLIAM ZUBE,              )
                                  ) Case No. 20-20491
     Defendant.                   )
_____ )


                         TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE THOMAS L. LUDINGTON
                    UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    ANCA I. POP
                       United States Attorney
                       Eastern District of Michigan
                       101 First Street
                       Suite 200
                       Bay City, MI 48708

For the Defendant:     JUSTIN WILLIAM ZUBE
                       In Pro Se




Court Reporter:        Carol M. Harrison, RMR, FCRR
                       1000 Washington Avenue
                       Bay City, MI  48708


         Proceedings reported by stenotype reporter.
    Transcript produced by Computer-Aided Transcription.
```

```
 1                    P R O C E E D I N G S
 2            (At 2:01 p.m., proceedings commenced.)
 3            (Defendant present.)
 4            THE CLERK:  United States of America versus Justin
 5   Zube, Case No. 20-20491.
 6            THE COURT:  Good afternoon.  If we could have
 7   counsel's introductions, Ms. Pop.
 8            MS. POP:  Good afternoon, Your Honor.  Anca Pop on
 9   behalf of the United States.
10            THE COURT:  And the record will reflect the fact that
11   Mr. Zube's present.  He was last in court on April the 28th
12   where we addressed the motion that had been made by Ms. Ellis
13   to be excused from further representation because he was
14   essentially seeking to have her do something that she did not
15   believe she could do in pursuit of her professional
16   commitments.
17            Have you had a chance to read Ms. Pop's motion,
18   Mr. Zube?
19            THE DEFENDANT:  I did receive that.  I just wanted to
20   say I was not aware I had court today.  They just asked me to
21   come up front and told me I had a court hearing.
22            THE COURT:  Could you sort of summarize what you
23   understood her motion to say?
24            THE DEFENDANT:  Basically that you guys want to
25   determine if I should have counsel, I believe.
```

1            THE COURT: Well, you, in part, made an oral motion
2   the last time we were in Court that was what you had described
3   to Ms. Ellis. She wanted me to address that particular line of
4   argument, your motion to dismiss for lack of jurisdiction.
5            THE DEFENDANT: Okay.
6            THE COURT: The second thing -- the second thing she
7   wanted me to do was to go a little bit slower in relieving you
8   of legal counsel. In part because it's so important to -- for
9   you to have that representation and to understand the
10  significance of a lot of decisions that have to get made in the
11  course of a proceeding that have implications that you may not
12  understand simply because of the fact that a lawyer is trained
13  for an extended period of time to understand the particular
14  lines of argument and potential consequences.
15           And she was saying, Judge, please, go slower in
16  relieving Mr. Zube of counsel. Reminding me that an attorney
17  can be removed if you continue to force the attorney to make
18  arguments that they may not professionally think can be
19  advanced.
20           So, I am here to at least offer you the opportunity
21  to consider two possibilities, because I think it would be
22  premature to actually address your oral motion. And that is,
23  one, the possibility of simply having Ms. Ellis back either as
24  the -- to act as your attorney. I will tell you that she
25  indicated that -- quite a bit of success in the fact that she

```
 1  had enjoyed representing you.  I will tell you she is a very
 2  good lawyer.
 3           Alternatively, if you think that Ms. Ellis's original
 4  judgment in telling you that she couldn't advance that line of
 5  argument might be wrong, I will go to the extent of appointing
 6  a new attorney so that you have the opportunity for fresh
 7  advice.  Tell me what you think.
 8           THE DEFENDANT:  One of the issues with me and
 9  Ms. Ellis was that there were certain times where she would
10  kind of understand what I was saying and then, you know, I'd
11  ask for something, like certain parts of case law or certain
12  things to be helped with, she would agree to it, and then two
13  weeks later I'd get a letter from her saying she wasn't going
14  to do it.
15           Just like she said, you know, send me the paperwork,
16  I'll type it up for you, and then she waited a month and a half
17  to say, I'm not doing it for you.  I don't want no part of it.
18  It wasn't strictly straightforward as she put it that we were
19  just disagreeing.  It was she would speak to me in a Zoom
20  meeting and kind of agree to what we were doing, and then tell
21  you guys that she didn't agree with it, and I don't believe we
22  had a very good working relationship.
23           One of the other things was I had even, you know,
24  asked -- the last six, seven months I've been asking for a bond
25  hearing, and she just flat out refused to even ask for it.  She
```

1  said, it's not worth your time to file it.  And I know one of
2  the points you had made at our last hearing was it wouldn't do
3  any good to not appoint an attorney who I may not be on the
4  same page with, and I know generally attorneys are appointed in
5  kind of a lottery system, correct?
6              THE COURT:  Yeah.  That's an interesting choice of
7  words, but the idea is generally correct.
8              THE DEFENDANT:  There is one attorney that I've had
9  some contact with, but due to the extremely high phone prices
10 here, I haven't been able to call and confirm if he would be
11 able to represent me, or if you guys may appoint him.  I don't
12 know if that's an option.
13             THE COURT:  It is not likely an option because the
14 decision as to the selection of Court-appointed counsel is
15 actually not made by the Court.  It's actually made by the
16 public defender.  Think of it that way.
17             THE DEFENDANT:  Right.  I just thought it might have
18 saved us both some time because you said it wouldn't do any
19 good to not have an attorney who didn't understand, and
20 Mr. Harrison does understand what I was trying to say with my
21 motions.  He understands --
22             THE COURT:  And, I'm sorry, what's the gentleman's
23 name?
24             THE DEFENDANT:  Robert Harrison.
25             THE COURT:  Yeah.  He's not -- he's not panel

```
 1  counsel, so he would not be eligible.
 2           THE DEFENDANT:  Right.  I know he's been appointed
 3  through -- I want to say it was one of the lower districts,
 4  southern appeared, but I just didn't know --
 5           THE COURT:  I'm sorry, by whom?
 6           THE DEFENDANT:  He does public defender work.  It was
 7  just out of a more southern county.
 8           THE COURT:  Okay.  No, you would essentially have to
 9  accept the appointment of the attorney that was appointed by
10  the Federal Defender Office.
11           THE DEFENDANT:  Right.  See, I was kind of -- I'm in
12  the middle grounds of somebody who knows what I'm trying to say
13  in my motion but not able to get him because I don't have any
14  funds.  I don't even have -- I'm currently having an issue with
15  the jail.  I'm not even on the system, both for visits or for
16  the account.
17           My family can't visit me or put money in my account
18  for some reason, and it's been going on for the last month, so
19  I can't even contact my family.  They do not print off forms
20  here for me to file, like legal forms.  You can't even ask for
21  them.  There's just a lot of issues here that I believe certain
22  rights are being deprived by the way they function.
23           THE COURT:  Well, your choice would be Ms. Ellis or
24  alternatively I will ask the FDO to appoint new counsel for you
25  to consult with.
```

```
 1              THE DEFENDANT:  Yeah, because I hoped to contact that
 2   other attorney, but without being able to get ahold of him, I
 3   can't even talk to him about possibly hiring him or anything,
 4   so -- I mean, the only real option I have at this point is to
 5   ask for a different attorney.
 6              THE COURT:  Okay.  And I will tell you we have some
 7   very good panel attorneys.
 8              THE DEFENDANT:  Yes, sir.
 9              THE COURT:  Ms. Pop, we will do that promptly.
10   Anything else that you would like to add, ma'am?
11              MS. POP:  Not at this time, Your Honor.
12              THE COURT:  We have the motion under advisement.  We
13   will appoint counsel and ask for them to see you promptly, sir.
14              THE DEFENDANT:  Can I say two things, please?
15              THE COURT:  Yeah, as long as you're careful and
16   understand that whatever you're about to say is -- is -- you
17   haven't counseled with an attorney about.
18              THE DEFENDANT:  Yes, sir.  I just wanted to let
19   Ms. Pop know that I have received part of my discovery, but
20   there is over 80 pages that were not there.  I don't know what
21   the issue was with that.  Ms. Ellis didn't give me full
22   discovery motion.
23              And, second, is there a way that I can request a bond
24   hearing, or do I have to wait for the new attorney to contact
25   you about that?
```

```
 1              THE COURT:  You'll have to wait for a new attorney, I
 2   would suggest probably with respect to also the discovery
 3   issues in addition to the request for a bond hearing?
 4              THE DEFENDANT:  Yes, sir.
 5              THE COURT:  Do you agree, Ms. Pop?
 6              MS. POP:  Yes, Your Honor.
 7              THE COURT:  All right.  Thank you, sir.  We will --
 8   we will make every effort to expedite that process as quickly
 9   as possible.
10              THE DEFENDANT:  If possible, could you maybe make
11   sure they are getting my mail here.  I didn't receive the
12   notice for the last hearing until the morning of the hearing,
13   and I didn't receive one for this hearing or any kind of
14   notice.
15              THE COURT:  Ms. Winslow, has the jail generally been
16   receiving notice of the hearing well in advance of the time
17   that it's actually occurring?
18              THE CLERK:  It's my understanding that the jail
19   receives the notice of the hearing within a day or two of me
20   scheduling it.
21              THE COURT:  Okay.  What may be breaking down is
22   communication between the jail and the defendant?
23              THE DEFENDANT:  Yes.
24              THE COURT:  Okay.  I appreciate you bringing that to
25   our attention.
```

```
1          THE DEFENDANT:  Thank you, sir.
2          THE COURT:  And thank you.
3          MS. POP:  Thank you.
4          THE COURT:  Hearing's closed.
5          (At 2:12 p.m., court recessed.)
```

* * * *

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the proceedings in the above-entitled matter.

_____
Date: 11-14-2022    Carol M. Harrison, RMR, FCRR
                    Official Court Reporter
                    United States District Court
                    Eastern District of Michigan
                    1000 Washington Avenue
                    Bay City, MI  48708