```
 1                 IN THE UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2
   UNITED STATES OF AMERICA              ) Bay City, Michigan
 3                                       ) March  2, 2022
       vs.                               ) 10:43 a.m.
 4                                       )
   JUSTIN WILLIAM  ZUBE,                 )
 5                                       ) Case No. 20-20491
       Defendant.                        )
 6 _____       )

 7
                         TRANSCRIPT OF HEARING
 8             BEFORE THE HONORABLE THOMAS L. LUDINGTON
                    UNITED STATES DISTRICT JUDGE
 9
   APPEARANCES:
10
   For the Government:    WILLIAM J. VAILLIENCOURT
11                        ANN NEE
                          United States Attorney
12                        Eastern District of Michigan
                          101 First Street
13                        Suite 200
                          Bay City, MI 48708
14
   For the Defendant:     JEFFREY J. RUPP
15                        Brisbois, Brisbois & Rupp, PLLC
                          1107 Gratiot Avenue
16                        Saginaw, MI  48602

17

18

19

20

21 Court Reporter:    Carol M. Harrison, RMR, FCRR
                      1000 Washington Avenue
22                    Bay City, MI  48708

23

24         Proceedings reported by stenotype reporter.
      Transcript produced by Computer-Aided Transcription.
25
```

US v. Zube - Hearing - March 2, 2022

```
 1                    P R O C E E D I N G S
 2            (At 10:43 a.m., proceedings commenced.)
 3            (Defendant present.)
 4            THE CLERK:  United States of America versus Justin
 5   Zube, Case No. 20-20491.
 6            THE COURT:  Good morning, counsel.  If we could have
 7   your introductions, please.
 8            MR. VAILLIENCOURT:  Good morning, Your Honor.  May it
 9   please the Court, William Vailliencourt appearing on behalf of
10   the United States.
11            MS. NEE:  And Ann Nee also appearing on behalf of the
12   United States.
13            MR. RUPP:  Good morning, Your Honor.  Jeffrey Rupp
14   appearing on behalf of Mr. Zube, who is present with me.
15            THE COURT:  Good morning, Mr. Rupp.  Good morning,
16   Mr. Zube?
17            THE DEFENDANT:  Yes, sir.
18            THE COURT:  We are assembled for final pretrial
19   conference in the case.  We do have an identified trial date of
20   March the 23rd.  We also have approval from the committee in
21   Detroit in order to proceed on that date.
22            We have a few things we need to cover today.  The
23   first of which is to get a summary of the evidence that the
24   Government anticipates offering, the witnesses that will be
25   called so that we can have an understanding for the amount of
```

```
 1  time that we need to schedule for the trial.
 2              I also like to get a summary of any plea bargaining
 3  that has occurred during the course of the case because today
 4  brings any possibility of plea bargaining to a conclusion
 5  because today is the plea bar date.
 6              Mr. Vailliencourt, if you'd like to give us an
 7  overview of the witnesses you anticipate calling and the
 8  testimony that you believe will be relevant to the charges.
 9              MR. VAILLIENCOURT:  Yesterday, Your Honor.  The
10  defendant is charged in a superceding indictment with a single
11  count involving the possession of child pornography with intent
12  to access and view.
13              The case essentially involves the receipt of a tip
14  from Snapchat to law enforcement.  Through the investigation of
15  that tip led to identification of the defendant and the
16  defendant's residence as a person who would have possession of
17  those images.
18              During the course of the investigation, police
19  executed a search warrant at Mr. Zube's home.  Mr. Zube was
20  present at the time.  During the execution of the warrant, in
21  Mr. Zube's bedroom they found a number of devices, specifically
22  there was a Coolpad cell phone that was found on his bed, an LG
23  cell phone which was found on the floor next to his bed, and
24  then another LG phone that was found in the top dresser drawer
25  of his bedroom.
```

Subsequent analysis revealed that each of those items contained child pornography. After the execution of the search warrant, the defendant contacted an FBI agent. That agent is Doug Smith to -- he wanted to talk with him about possibilities of providing information on individuals who the defendant characterized as higher-ups involved in the possession and distribution of child porn, characterizing himself as a low-level player.

So despite repeated statements and -- by the agent that there were no promises, threats, there was no benefit that was being offered to him, he continued to provide information to the FBI regarding individuals that the defendant claimed were involved in the distribution of the child pornography.

To present this case, the Government anticipates a number of witnesses, primarily Detective Sergeant Evan Zapolski from the Michigan State Police. He is also a task force officer with the FBI. Trooper Adam Green from the Michigan State Police, Trooper Amy Belanger, Detective Sergeant Brian Byarski from the Grand Blanc Police Department.

They were all involved in the execution of the search warrant. Detective Byarski took photos. Trooper Green, Trooper Belanger, Detective Zapolski were involved in the execution of the search warrant and the recovery of the items.

Also present was Special Agent Michael Wiggins from the FBI. He was involved in collecting the evidence. Special

1  Agent Doug Smith from the FBI was involved in the post-search
2  conversations with the defendant.  Also during those
3  conversations, the defendant made handwritten notes on a list
4  essentially acknowledging ownership of the items that were
5  seized during the execution of the search warrant.
6         In addition, the defendant has previously been
7  convicted in the Bay County Circuit Court of the state felony
8  offense of possession of child sexually abusive material,
9  essentially the state analog to possession of child
10 pornography.  The circumstances in that case also involved the
11 defendant possessing digital images of child pornography
12 involving very young children, similar to what was possessed in
13 this case.
14        The Government would intend to be calling Holly Von
15 Elliott who was living with the defendant at the time and
16 discovered those images.  And then also the defendant was
17 interviewed by Robert Schmitz from the FBI, and in the course
18 of that interview, he acknowledged that he had, in fact, been
19 convicted of the possession of child pornography in the state
20 court.  I think that presents a pretty broad overview of the
21 Government's witnesses and the facts that we intend to elicit
22 during the course of the trial in this case.
23        There have been some plea discussions, which I'd like
24 to place on the record.
25        THE COURT:  And just for purposes of our planning at

1 this point, I'm anticipating in the range of two, perhaps three
2 days for the Government's proofs?
3     MR. VAILLIENCOURT: I believe that's accurate, Your
4 Honor.
5     THE COURT: And the relevance of the Bay County
6 conviction?
7     MR. VAILLIENCOURT: That's under Federal Rule of
8 Evidence 414 specifically.
9     THE COURT: I'm with you, I understand.
10     MR. VAILLIENCOURT: Thank you.
11     THE COURT: Yes. If you could summarize any plea
12 discussions so that we can bring that to a conclusion.
13     MR. VAILLIENCOURT: There was a preliminary
14 calculation of the guidelines, which included the three-level
15 reduction if -- for acceptance of responsibility for a plea,
16 and our calculation of the guidelines reflected 130 months to
17 162 months, so roughly a little over 10 years to 13 and a half
18 years.
19     If there's a conviction at trial, obviously the three
20 level acceptance of responsibility reductions would not able
21 available, and his guidelines would be, at least at our
22 calculation, at least 168 to 210 months, which is 14 to 17 and
23 a half years. The offense carries a mandatory minimum of 10
24 years with up to a maximum of 20.
25     The initial offer from the Government was a top of

1  the guidelines recommendation.  I have advised counsel that
2  given some circumstances that we have discussed, that the
3  Government would be willing to make a bottom of the guidelines
4  recommendation.  As a result of that, you know, defendant's
5  sentence would be, if the Court were to follow it, would be
6  closer to -- closer to the mandatory minimum, which the Court
7  must impose as opposed to after trial his guidelines range
8  would result in something closer to the maximum.  So those were
9  the extent of our discussions.
10             THE COURT:  Thank you.  Mr. Rupp, with you -- do you
11 agree with respect to the outline on the guideline assessment?
12             MR. RUPP:  I do, Your Honor.
13             THE COURT:  Am I also correct in concluding that
14 you've had a chance to review that carefully with Mr. Zube and
15 that his decision was to reject the offer and to proceed to a
16 jury trial of the case?
17             MR. RUPP:  Judge, you are correct.  I've discussed on
18 multiple occasions the opportunity to enter a plea with the
19 Government to resolve this.  In fact, at one point, although I
20 don't believe it was ever formally offered, because he had
21 declined any interest in them seeking approval for it, is there
22 was even discussion of allowing to plead under these terms that
23 would also, within the Rule 11, preserve his opportunity to
24 challenge the legality of the search at his home, which has,
25 frankly, been a primary focus of his discussions with me.

```
 1            And it's my understanding, after having discussed
 2   that with him repeatedly, that he does not wish to enter a plea
 3   under the proposed -- or even the potential terms that would
 4   include an opportunity to appeal following conviction.
 5            THE COURT:  Mr. Zube, is the gentleman's explanation
 6   accurate?
 7            THE DEFENDANT:  Yes.  I had wanted to pursue that
 8   before trial, instead of taking the plea deal and then doing it
 9   later.
10            THE COURT:  I'm sorry, sir.  I didn't understand
11   that.
12            THE DEFENDANT:  I wanted to -- to try to file the
13   motions on those issues before trial instead of taking the deal
14   and then trying to do it later.
15            THE COURT:  Oh.  I'm trying to make sense out of
16   that, Mr. Rupp, in terms of the process and procedure.  Those
17   motions are not motions that have been filed?
18            MR. RUPP:  My understanding is that they have not
19   been filed.  I did not file them.  I guess to remind the Court,
20   or to remind the record, I am the second counsel representing
21   Mr. Zube.  My understanding is that previous counsel, the
22   relationship broke down over same or similar issues that
23   Mr. Zube wanted to raise.
24            Both prior counsel and I have explained to him that
25   we don't believe or find any legal justification or case law
```

1  that supports his arguments and so that both prior counsel and
2  I have refused to file the requested motion because we believe
3  it's frivolous.
4             I've explained to him, with that being the case, the
5  only opportunity I see for him to raise the issue is
6  post-conviction in the appellate courts where he can file his
7  own briefing and motions without the consent of counsel doing
8  it on his behalf, and it -- frankly it's been my advice that he
9  accept the opportunity, should it be given, to enter a plea
10 that would preserve his opportunity to raise --
11            THE COURT:  I do recall giving this quite a bit of
12 attention by -- with Ms. Ellis, whom was previous counsel.
13            THE DEFENDANT:  Can I clarify one thing, sir?
14            THE COURT:  Well, yeah, certainly, but I do want to
15 make sure that you've had a chance to consult with Mr. Rupp
16 before you make a statement in court that you might be
17 responsible for.  Have you had a chance to talk with him?
18            THE DEFENDANT:  I have raised other issues with him
19 and he has continued to say that -- he's basically telling the
20 Court that I'm still raising the same issue that has been told
21 to you prior, and that's not the case.
22            THE COURT:  Do you want to clarify that with Mr. Rupp
23 before --
24            THE DEFENDANT:  There is a warrant -- I'm sorry, an
25 issue with the execution of the warrant.  There is, I believe,

1  issues with the warrant themselves.  I'm still missing
2  approximately 200 or so pages of my discovery, and I asked
3  Mr. Rupp multiple times to get those, the subpoenas and the
4  video, and at one point when I asked for the video of the
5  arrest, he told me it wasn't his job, that I should go with a
6  civil attorney to do that.
7           So there are multiple other issues that I would --
8  still working on, and I get roughly 45 minutes a day to use the
9  kiosk in the jail.  So I'm quite restricted with that aspect,
10 and on top of that, with the disabilities in my hands, it's
11 also hard to write down, and we can't print or copy or any of
12 that stuff the case law that we do happen to find.
13          THE COURT:  You have had a chance to talk about these
14 issues with Mr. Rupp; you just have not been satisfied with his
15 response?
16          THE DEFENDANT:  Yes.  And the lack of receiving my
17 discovery and other things I've asked him to do has just not
18 been done.
19          THE COURT:  Mr. Rupp.
20          MR. RUPP:  Judge, he has repeatedly asked or made the
21 point that he's missing a 100 or 200 pages of discovery.  It's
22 my belief that with the likely exception of the lengthy
23 forensic reports that are basically, for lack of a better term
24 as a layperson, gibberish, I believe I've turned over
25 everything that I've received from the Government.

US v. Zube - Hearing - March 2, 2022

```
 1            Each time he's told me that he's missing 100 to 200
 2   pages of discovery, I've asked him to try to give me some
 3   guidance or an indication where he thinks it's missing, and if,
 4   in fact, I have it, or we don't have it, I would provide it to
 5   him.
 6            As far as the request for a video, to put it in
 7   context, I think he's paraphrasing what I told him, but my
 8   understanding with the video is that his claim is that during
 9   the execution of the search warrant, one or more of the law
10   enforcement officers involved in it were physically assaultive
11   to him, and I explained that if he wanted to pursue a case
12   against them for violating his civil rights, that that's
13   something that would have to be done separately.
14            THE COURT:  Yes.
15            THE DEFENDANT:  There is also issue with the
16   execution of the warrant, which I believe the video is relevant
17   to.  And I had written a motion, without being aware of the
18   *Hudson* case, which says that suppression is not a mandatory
19   right any more, although it's still a possible judicial remedy.
20   I had sent that to Mr. Rupp, asked him to advise me on what to
21   do with the situation as I don't know what to ask about -- I'm
22   sorry, I don't know what remedy to -- I don't know what remedy
23   is available to ask for as that is not a right anymore but is
24   only a remedy at the end of possibilities, so --
25            THE COURT:  He has indicated to you that to the
```

```
 1  extent that the behavior of the officers that you're
 2  complaining of was directed not to the lack of probable cause
 3  or the execution of the warrant but because they were
 4  assaultive to you and that that -- the remedy for that would be
 5  a civil rights case.
 6            THE DEFENDANT:  No, sir.  That is one of two issues.
 7  There's also a violation of 1831.09 the no knock entry part,
 8  which has been -- not overruled by Hudson, but the remedy to
 9  that has been put on the farther end of possibilities.  It used
10  to be an automatic suppression of evidence, but now it is not a
11  guarantee anymore.
12            THE COURT:  Today we have to bring the plea
13  bargaining to a conclusion and anticipate and prepare for our
14  trial on the 23rd.
15            Other than the possibility of possibly calling
16  Mr. Zube, Mr. Rupp, do you anticipate any witnesses for the
17  defense?
18            MR. RUPP:  I do not.
19            THE COURT:  And you are indeed satisfied with the
20  outline of the plea bargaining that has been explained by
21  Mr. Vailliencourt, and you're satisfied that Mr. Zube has
22  declined the plea offer, fully understanding the range of
23  possibilities that might occur at trial?
24            MR. RUPP:  That is certainly my understanding, but I
25  guess I would like to have him acknowledge the same on the
```

```
 1  record.
 2          THE COURT:  Sir?
 3          THE DEFENDANT:  I'm not exactly sure what -- what --
 4  what the question is.
 5          MR. RUPP:  Is it true that you are rejecting the plea
 6  offer?
 7          THE DEFENDANT:  Yes, because I would like to pursue
 8  those issues before trial.
 9          THE COURT:  The key thing that we're trying to do
10  today is -- because plea bargaining is being brought to a
11  conclusion, you'll be committed to the jury's determination if
12  you reject the offer today.  We want to be sure that you have a
13  good understanding of the potential consequences of that.
14          THE DEFENDANT:  Yes.
15          THE COURT:  I think we've covered everything from the
16  Court's perspective.
17          Government?
18          MR. VAILLIENCOURT:  I don't believe there's anything
19  further we need to discuss at this time.
20          THE COURT:  Defense?
21          MR. RUPP:  Judge, just to make the record complete
22  again, or kind of bringing them together, because of Mr. Zube's
23  requests for additional discovery materials, videos and motions
24  to be brought on his behalf, he's asked me to request an
25  adjournment of the trial so that we can accomplish those
```

things.

In addition, he wants the Court to know that he continues to be denied adequate medical treatment at the Roscommon County jail. He has asked me to, once again, request bond. He has cited some case law, including a case people -- or *US versus Melendez-Carrion,* 790 F.2d 984, from the Second Circuit, a 1986 case that apparently stands for the proposition that preventative detention based on potential dangerousness is at base illegal.

I have not had a chance to review the case or the other one cited in his notes here to verify whether or not that that is the case, but to the extent that it is, we would note that he denies being a flight risk. He has family and children that live in the area. He has a place to live. He still can work for his uncle and possibly for Jason Gower, I'm assuming the local attorney.

THE DEFENDANT: Yes, sir.

MR. RUPP: That he was on bond February through October, 2020, that he never missed court. He doesn't have drug or alcohol issues. He's never put any witness or victim in danger. There are no other pending cases. He needs medical attention that's not being addressed in the jail. He's lived in Bay City his entire life, and he is not under psychiatric care or any medical regime of any kind.

Previously mentioned, his desire as an alternative, I

1  think, to suppression that the officers who violated the no
2  knock provisions during the warrant execution that they be
3  punished, that they perhaps are liable for up to a year
4  detention of their own or -- and incarceration and/or a $1,000
5  fine.
6          THE COURT:  Thank you.  We've covered all of those
7  items.  We'll bring the -- our hearing to a conclusion.  We'll
8  see you on the 23rd.
9          (At 12:03 p.m., court recessed.)

13                         * * * *
14                      C E R T I F I C A T E
15     I certify that the foregoing is a correct transcript
       from the proceedings in the above-entitled matter.

19  Date: 11-14-2022    Carol M. Harrison, RMR, FCRR
                        Official Court Reporter
20                      United States District Court
                        Eastern District of Michigan
21                      1000 Washington Avenue
                        Bay City, MI  48708