```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF MICHIGAN

 3  UNITED STATES OF AMERICA,         )
                                      ) Case No. 20-20491
 4       vs.                          )
    -                                 ) Detroit, Michigan
 5  JUSTIN WILLIAM ZUBE,              )
                                      ) October  22, 2020
 6       Defendant.                   )
    _____) 5:13 p.m.
 7

 8              TRANSCRIPT OF DETENTION HEARING
           BEFORE THE HONORABLE ELIZABETH A. STAFFORD
 9                UNITED STATES MAGISTRATE JUDGE

10  APPEARANCES:

11  For the Government:  ANCA POP
                         United States Attorney
12                       Eastern District of Michigan
                         101 First Street
13                       Suite 200
                         Bay City, MI 48708
14
    For the Defendant:   COLLEEN FITZHARRIS
15                       Federal Community Defender
                         111 E. Court Street; Suite L100
16                       Flint, MI  48502

17

18

19

20  Recorded by:         Sandra Osorio

21  Transcribed by:      Carol M. Harrison, RMR, FCRR
                         1000 Washington Avenue
22                       Bay City, MI  48708

23

24      TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING
           TRANSCRIBER NOT PRESENT AT LIVE PROCEEDINGS
25
```

US v. Zube – Change of Plea – October 22, 2020

```
 1                    P R O C E E D I N G S
 2           (At 5:13 p.m., proceedings commenced.)
 3           (Defendant present.)
 4           THE CLERK:  The Court calls Case No. 20-20491, United
 5  States of America versus Justin Zube.
 6           MS. POP:  Good afternoon, Your Honor.  Anca Pop on
 7  behalf of the United States.
 8           THE COURT:  Good afternoon.
 9           MS. FITZHARRIS:  Good afternoon, Your Honor.  Colleen
10  Fitzharris on behalf of Justin Zube.
11           THE COURT:  Good afternoon.
12           Mr. Zube, please state your full name for the record.
13           THE DEFENDANT:  Justin William Zube.
14           THE COURT:  Mr. Zube, you have the right to remain
15  silent.  Anything you say may be used against you.
16           Do you understand that we're conducting this hearing
17  by video today because the court is closed due to the pandemic?
18           THE DEFENDANT:  Yes.
19           THE COURT:  Do you have any objection to proceeding
20  by video?
21           THE DEFENDANT:  No.
22           THE COURT:  All right.  Ms. Pop presented a detention
23  motion worksheet.  Have you reviewed that, Ms. Fitzharris?
24           MS. FITZHARRIS:  I don't believe I received this.
25           THE COURT:  Okay.  I'll remind the AUSA that the
```

1 worksheet is supposed to be shared with defense counsel before
2 the hearing.
3     The worksheet says that Mr. Zube is eligible for
4 detention because the charge is a felony involving a minor
5 victim. It does not say that a presumption applies, and I
6 would ask you, Ms. Pop, under --
7     MS. POP: It does not. He's only being charged with
8 possession of child pornography.
9     THE COURT: Okay. All right. Thank you.
10     Okay. You can go ahead, Ms. Pop.
11     MS. POP: Yes, Your Honor. The Government requests
12 detention. We concur with the Pretrial Services'
13 recommendation and request detention based on both risk of
14 nonappearance and danger to the community. We would proffer
15 the facts in the indictment and those in the Pretrial Services
16 report as well for the record.
17     Now, I know that defense counsel has mentioned there
18 is a couple topics she would like to discuss at a brief bar.
19 I'm not sure if she's still planning to do that, otherwise, I'm
20 going to address this in my argument.
21     MS. FITZHARRIS: Yes, Your Honor. (inaudible) issues
22 that I think should be discussed at a sidebar.
23     THE COURT: Do you -- do you -- I don't know whether
24 Mr. Nasser is still speaking with Mr. Nash.
25     George, are you able to put us in a room that we

```
 1  have --
 2              UNIDENTIFIED SPEAKER:  Yes, I -- yes, I can put the
 3  three of you in a room.
 4              THE COURT:  All right.  We'll be right back,
 5  Mr. Zube.
 6              (Pause in proceedings.)
 7              THE COURT:  I just wanted to say for the record there
 8  was a discussion about factual information that Government
 9  counsel and defense counsel do not agree on, and, as I said
10  during the breakout, to the extent that there is a factual
11  dispute that either party is asking me to weigh in to the
12  decision, that needs to be -- there needs to be a record of
13  that factual dispute so that to the extent that there are any
14  challenges later on, or there's a need to know what went into
15  my decision, that there's a record of it and that it's not
16  susceptible to different interpretations.
17              Ms. Pop, what I would suggest, since it sounded like
18  you wanted to address that information sort of defensively to
19  rebut in advance Ms. Fitzharris' statement, if that's the case,
20  then you can leave that out of your proffer.  If you believe
21  that it needs to be raised in rebuttal to Ms. Fitzharris'
22  proffer and argument, then you can raise it at that time.
23              So you can go ahead with your proffer and argument.
24              MS. POP:  Sure, Your Honor.
25              So a federal grand jury indicted the defendant in
```

1 this case with possession of child pornography.  He is now
2 facing approximately 10 to 20 years in prison because this is
3 not his first offense of this type, but this is his second
4 offense for possession of child pornography.  And it's also
5 worth mentioning that he also has a juvenile conviction for
6 CSC-4 for having had sexual relationships with his little
7 brother.
8         The current offense involves the possession of over
9 300 child pornography images, including depictions of
10 prepubescent children engaging in sexual acts with adults, as
11 well as bondage of these children.  At least four identified
12 children were depicted in the images he possessed.
13         The forensics of his electronic devices also showed
14 that he visited several websites that pertain to child
15 pornography and, in addition is just relevant conduct, although
16 not charged here, he had approximately 48 videos of
17 surreptitiously recording people using a restroom.
18         So specifically how this came case --
19         THE COURT:  Ms. Pop, you said that he had the video
20 of people using the restroom.  Is it your understanding that he
21 took that video or he just possessed it?
22         MS. POP:  It is likely -- we didn't look further into
23 it at this point, but, yeah, he had 48 videos of
24 surreptitiously recording people in restroom.
25         Specifically on or about December 7 of 2019, the

National Center for Missing and Exploited Children received a cyber tip from Snapchat. They reported an account that uploaded child pornography to the account. Through further investigation of the account, subscriber information and the IP address, law enforcement determined that the suspect subscriber with Justin Zube, and the FBI conducted a search warrant at his residence and seized several of his electronic devices. On those devices they found the images of child pornography I just described and the videos that we referenced as well.

When it comes to the history and characteristics of this defendant, he is only 32 years old but already has a very serious criminal history. In fact, he scores a criminal history Category VI and very little history of being a productive member of the community.

He has over 10 convictions and another 10 arrests that didn't result in convictions. He has a history of charges involving a child -- charges involving sex offenses and using a computer or telephone to do so.

If we can start with in 2002 -- I believe the Pretrial Services report does a great job at enumerating all of these offenses and his arrests and numerous violations of probation or parole, and I'm -- I wanted to also check on the record, the Government has sent in discovery or in preparation for this hearing both to the Court as well as to defense some specific materials pertaining to this defendant's background

```
 1  and criminal history.
 2              So in 2002 he was adjudicated as a juvenile.
 3              MS. FITZHARRIS:  I'm sorry, Ms. Pop.  I don't know
 4  what you're referring to because I don't think -- I didn't
 5  receive that.
 6              MS. POP:  It was sent yesterday to your office.
 7              MS. FITZHARRIS:  I don't --
 8              MS. POP:  Yeah, I'm not sure.  You probably should
 9  check with your colleagues.  It was forwarded to your office
10  yesterday.
11              THE COURT:  Wait a moment.  Just a moment.  I thought
12  I asked.  Did you receive a copy of the presentence -- Pretrial
13  Services report, Ms. Fitzharris?
14              MS. FITZHARRIS:  Yes, I have that.  Ms. Pop
15  referenced materials that she sent about Mr. Zube's background.
16  I don't have those.
17              MS. POP:  Those were pretty well summarized, though,
18  in the Pretrial Services report as well, and it's pertaining
19  mainly to a variety of violations of probation and the
20  background for his previous conviction for possession of child
21  pornography.
22              THE COURT:  Go ahead, Ms. Pop. The 2002 conviction is
23  described, as well as the supervision compliance.  If there's
24  something that is not covered, then we can address it at that
25  time.
```

```
 1              MS. POP:  In 2002, he was adjudicated as a juvenile
 2   for a -- for criminal sexual conduct in the fourth degree,
 3   though he was charged with more serious ones as well for
 4   touching his little brother's penis and actually performing
 5   oral sex on his brother.
 6              In 2005, he was convicted of breaking and entering a
 7   vehicle to steal property less than $200, and he was sentenced
 8   to probation and some jail.
 9              In 2005, a little bit later in September, he was
10   convicted of breaking and entering with intent.  Again
11   sentenced to 330 days and 36 months probation.  He violated
12   probation two months -- or a year later and was sentenced to
13   one year and 10 months to 10 years.
14              In 2007, he was convicted of larceny.
15              In 2010, student safety zone loitering.
16              In 2011, he was sentenced to a two-year term of
17   probation for domestic violence and attempted weapons or
18   firearms possession by a felon.  Several bench warrants were
19   issued while he was on probation for this for various
20   violations such as failing to report a change of address,
21   stealing a bicycle, so committing new crimes.
22              He was convicted in 2012 also of receiving and
23   concealing stolen property.  Again, several bench warrants were
24   issued for him violating the probation term here, either by
25   committing new crimes such as one of them was possessing child
```

pornography or by failing to comply with the MDOC's electronic monitoring program. He failed to complete his 180 days on being monitored. He actually -- his whereabouts were unknown on several dates, and he had left his residence without any kind of prior authorization. He also violated -- well, he's -- he was eventually sentenced to time served and discharged from that probation term as unsuccessful.

In 2014, he was sentenced to one year and four months to four-year term for incarcerate -- in prison for the child sexually abusive material possession. That is his prior conviction for child pornography. And it's worth noting that when he committed that offense, he was on probation for another conviction.

While Zube was serving the prison term, he received 10 misconducts, out of place bounds several times, disobeying a direct order, possession of dangerous contraband, interference with the administration of rules, fighting -- fighting several times, substance abuse and other substances, destruction or misuse of property, dangerous contraband and so on. He was actually eventually discharged from the Michigan Department of Corrections after serving the maximum four-year term without parole.

So he has a history of child sexually abusive material, also the using of electronics to -- to commit these crimes, domestic violence and other violent behavior. There

are several arrests and several cases that mention the fact that he was involved in some sort of violent conduct against victims.

His adjustment on parole or probation was extremely poor and failed to abide by the court orders and by other rules. He also failed to comply with the sex offender registration requirements. There was one charge that was later not prosecuted, but more recently, there is also a warrant because of a more recent failure of him to comply with these requirements.

He resides extremely close to a variety of schools. He is unemployed, has been unemployed for quite some time, since he got released from prison. He does not have any financial resources. He has a lot of debt and outstanding liabilities. He has no property and lives with his father, but he also lived with him during the commission of all other prior offenses and all of his parole or probation violations.

He has a mental health history of depression and even suicidal thoughts. He has demonstrated that he's a danger to the community, especially by his unabated criminal behavior that is undeterred by any restrictions and conditions placed on him by the courts or by lengthy prison sentences. His history demonstrates he is a danger and that no conditions would reasonably assure the safety of the community or his appearance.

1              That's all for now, Your Honor.
2              THE COURT:  Thank you.
3              Ms. Fitzharris?
4              I can't hear you, Ms. Fitzharris.
5              MS. FITZHARRIS:  I'd like to begin by reminding the
6    Court there is no presumption in this case, and that includes
7    the fact that he is charged with an offense that carries a
8    mandatory minimum.  I think to place too much weight on the
9    potential sentence is problematic in the -- given that he is
10   presumed innocent.
11             A lot of the government's arguments about Mr. Zube's
12   alleged dangerousness to the community is the fact that this
13   offense allegedly occurred in February and we are here eight
14   months later, and I did not hear a significant argument that
15   Mr. Zube is somebody who is a risk of nonappearance.
16             Mr. Zube was told by the agent to come to the office
17   and they made -- they communicated about when he would do that,
18   and he went to the office.  I understand that they told him
19   that he was to pick up property, but given that he was
20   arrested, he knew this charge was pending, and this was an
21   option, so I don't think there's any concern that he is not --
22   he is going anywhere, given that he is a lifelong resident of
23   this district.
24             Mr. Zube also has a stable residence living with his
25   father.  His father is a significant support to him and is able

1  to provide him financially.  Mr. Zube has a difficult time
2  finding work because of the nature of his convictions and
3  having a felony, but he has been able to work odd jobs,
4  cleaning up at local bars, some yard work and things like that,
5  but finding steady employment is difficult, but his father
6  provides a significant stabilizing force.
7              The Government devotes a lot of attention to conduct
8  when Mr. Zube was 14 -- 14 years old.  That was a very long
9  time ago, and the way that somebody behaves when they were 14
10 is very different than the way they behave as an adult.
11 Mr. Zube submitted to a polygraph examination about touching,
12 and he passed that polygraph examination, so we do not have
13 evidence that he is involved in any hands-on contact with
14 minors of a sexual nature.
15              The residence where -- the proposed residence where
16 he would live with his father, the Court -- the Government
17 mentioned its proximity to schools.  My understanding is that
18 conviction -- that -- that condition of the sex offender
19 registration requirements about how far from schools is -- is
20 currently considered to be unconstitutional and is, therefore,
21 not enforceable.
22              Mr. Zube --
23              THE COURT:  Wait.  Can you say that again?  The what?
24              MS. FITZHARRIS:  Judge Cleland found that the -- the
25 resident -- the 1000 feet residence requirement is

```
 1  unconstitutionally vague.
 2          THE COURT:  Okay.  That's not what's at issue here,
 3  is it?
 4          MS. FITZHARRIS:  No, I'm just -- the Government
 5  raised the question about the propriety of the residence and
 6  its proximity to schools, and it's -- it's not like he would be
 7  in violation, but he -- he is actually registered as a sex
 8  offender in July, so he -- he was current on his sex offender
 9  registration.
10          The -- he has court for an alleged failure to
11  register that happened back in January or February.  That
12  appears to be potentially the result of misunderstanding.
13  Mr. Zube did not have money to pay, and there was an assumption
14  that he could not register if he did not -- if he was
15  delinquent on the fine.  All of that is going to -- Mr. Zube
16  plans to address that at his court appearance on the 6th.
17          The Government -- just to respond to a few other
18  things.  There are no -- there are no computers in the home
19  anymore.  There's no wifi in the proposed residence, no
20  tablets, and I -- I think, you know, it would be an appropriate
21  condition for the Court to say that Mr. Zube cannot have an
22  internet accessible phone.  But if the Court is concerned about
23  conduct, you know, accessing internet devices, there are
24  conditions that this Court can set to ensure that he succeeds.
25          Mr. Zube -- the Government also talked a lot of --
```

1  talked about misconducts in prison.  Ten misconducts in five
2  years may sound like a lot, but in the MDOC, the average person
3  receives two major misconducts per year, and major misconducts
4  versus minor mis -- minor misconducts like being out of place
5  or, you know, failure to follow rules, those things are
6  incurred regularly because -- in prison, and so I don't think
7  we really can infer a whole lot about how Mr. Zube would do on
8  pretrial supervision given that.  It's just -- to see someone
9  come out of the MDOC without misconducts is, frankly, a
10 remarkable feat.
11         And then to address the Government's -- the
12 Government is assuming that Mr. Zube took videos of --
13 surreptitious videos of people using the restroom, and we can't
14 detain him on an assumption.  Again, I think it's -- it's
15 critical to remember that in the -- in the period of time
16 between February and now, we don't have any issue regarding
17 contact, inappropriate contact, with minors.  His limited
18 contact with his children is always supervised, and he is
19 living with an appropriate adult, his father, who is -- who is
20 willing and able to support him throughout this case.
21         This Court should grant him his bond.  We're
22 recognizing that there are conditions.  I mentioned the
23 condition that he, you know, not obtain any computers.  I think
24 that is an appropriate condition, not to have internet capable
25 phone or any internet capable device, submit any devices that

1  are available to inspection, and if the Court is additionally
2  concerned about his location and conduct out in the community,
3  a GPS tether -- if there are, you know, allegations at least
4  would confirm, you know, where he is, but, for the most part,
5  Mr. -- Mr. Zube is at home with his father.
6          Unless the Court has any questions for me, I think
7  I'm finished.
8          THE COURT: Ms. Pop, any rebuttal?
9          MS. POP: Briefly, Your Honor, just to address a
10 couple of the statements about the fact that we referenced his
11 14 year old CSC-4 conviction. We do mention that, even though
12 it was when he was 14, because how he behaved at 14 actually
13 continued throughout his adult life. He continued the same
14 type of pattern of behavior.
15          All of his misconducts also in prison are actually a
16 reflection of his failure to obey by the rules and law which he
17 has done his whole adult life as well.
18          He was not necessarily cooperative at the time of the
19 search warrant because he failed, obviously, to answer any
20 questions about the current case and only took a polygraph on
21 something that he probably thought he could pass.
22          We also believe that the father is definitely not an
23 appropriate custodian in this case because the defendant
24 resided with him every time he committed any of the priors --
25 prior offenses and violations and that residing with his father

```
 1  didn't prevent him from committing new crimes.
 2          That's al, Your Honor.
 3          THE COURT:  All right.  Thank you.  Mr. Zube is
 4  presumed innocent.  It's the Government burden to prove by a
 5  preponderance of the evidence that he is a flight risk or that
 6  there's a risk that he would fail to appear, and by clear and
 7  convincing evidence that he presents a danger to the community.
 8          I don't really feel that the Government made an
 9  argument of failure to appear as directed or flight risk, but
10  instead an argument of dangerousness, and I agree with the
11  Government that there is clear and convincing evidence that
12  Mr. Zube does prevent -- present a danger to the community.
13          I usually do not consider convictions as old as 2002
14  or when someone was 14 unless it is indicative of a pattern of
15  behavior that continues to the recent period of time.  There is
16  a distinction that the 2002 conviction involves actual
17  touching, and there isn't evidence of actual touching since
18  then, but the 2014 conviction or the offense occurred while he
19  was on probation.
20          And I understand Ms. Fitzharris' argument to be that
21  it's not unusual for someone in the Michigan Department of
22  Corrections to have a lot of misconduct tickets, but I have to
23  say, it's very unusual to see a defendant serve the maximum
24  period of time.  It is much more common to see a defendant
25  released on parole before the end of his -- the maximum period
```

1  of the conviction.
2           And Mr. Zube has his hand up, but I can tell you that
3  I'm ruling, and I'm going to continue to rule.  And I also take
4  into consideration the pending charges for obstructing, the
5  failure to comply with the reporting duties.  I understand
6  Ms. Fitzharris has said there's been some miscommunication or
7  misunderstanding.  The Pretrial Services report says those
8  charges are pending and that he's scheduled for preliminary
9  examination on November 5th, and I do need to consider that.
10          I also -- and, really, the first consideration is the
11 nature and seriousness of the charges, and even though there
12 aren't allegations in the current complaint that Mr. Zube --
13 or, I'm sorry, the indictment, that he was touching anyone or
14 that he took the photographs, I do want to emphasize that the
15 possession, the collection of child pornography, is not a
16 victimless crime.  It is a crime that stays with the child
17 victims for -- for their lives, and the number of images that
18 Mr. Zube is alleged to have possessed is of significant
19 concern.
20          There are also the allegations that he has
21 surreptitiously recorded recordings of people who are using the
22 restroom.  There's a question about whether he took those
23 images or not.  Again, that's not a victimless crime, to take
24 pictures of people without their knowledge when they are using
25 the bathroom.  So, in other words, this is a crime with victims

```
 1  and the -- Mr. Zube's criminal history does not demonstrate
 2  that he has -- has diminished his interest in sexually abusive
 3  materials as he was convicted of in 2014.
 4          And for these reasons, I do find that there's clear
 5  and convincing evidence that he is a danger to the community
 6  and that there are no conditions or combination of conditions
 7  that would assure the safety of the -- of the community if he
 8  were released.
 9          Has Mr. Zube -- has he been arraigned?
10          THE CLERK:  Yes, Judge.  We did complete the
11  arraignment yesterday.
12          THE COURT:  Okay.  So this case -- it's assigned to
13  Judge Thomas Ludington, and he'll schedule all future dates.
14          Ms. Fitzharris, is there anything else you needed me
15  to do today with regard to Mr. Zube?
16          MS. FITZHARRIS:  No, not from me, although I would
17  like to speak to him.
18          THE COURT:  If Mr. -- if --
19          THE CLERK:  George and I can accommodate five minutes
20  max, but we do need to log off as soon after that.
21          THE COURT:  Okay.  All right.  Thank you.
22          Anything else, Ms. Pop?
23          MS. POP:  No, Your Honor.
24          THE COURT:  All right.  Thank you.
25          THE CLERK:  Thank you all.  Court is adjourned.
```

1        (At 5:49 p.m., court recessed.)

2

3

4                           * * * * *

5                      C E R T I F I C A T E

6    I certify that the foregoing is a correct transcript
     from the digital sound recording of the proceedings in
7    the above-entitled matter.

8

9

10                          _____
11   Date: 11-8-2022        Carol M. Harrison, RMR, FCRR
                            Official Court Reporter
12                          United States District Court
                            Eastern District of Michigan
13                          1000 Washington Avenue
                            Bay City, MI  48708
14

15

16

17

18

19

20

21

22

23

24

25